UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MONIQUE WOODS,

           Plaintiff,

    v.

CITY OF MARKHAM,

           Defendant.

Case No. 20 C 1668

Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Plaintiff Monique Woods was a police officer in the Markham Police Department (the "Department") until she resigned in May 2023. More than three years before her resignation, she brought this action against the City of Markham, alleging sex discrimination and harassment under Title VII of the Civil Rights Act of 1964. She also brings a claim under Illinois law for intentional infliction of emotional distress. Defendant City of Markham ("Markham") now moves for summary judgment on all claims. For the reasons stated below, the Court grants Markham's motion [64] in part as to Woods's sex discrimination claims based on failure to provide training equipment and denial of time off and dismisses without prejudice the remainder of her claims.

## I. Background[1]

The following facts are undisputed unless otherwise noted. In 2005, Woods began working for the Department as a 911 Dispatcher. DRPSOAF ¶ 1.[2] After giving birth to her son, Woods

---

[1] The Court has taken the facts from the parties' Local Rule 56.1 statements and supporting exhibits. The Court presents the facts in the light most favorable to Woods. *Emad v. Dodge Cty.*, 71 F.4th 649, 650 (7th Cir. 2023). These facts are undisputed unless otherwise noted.

[2] The Court cites to Defendant's LR 56.1 statement of facts as "DSOF," Plaintiff's response to Defendant's LR 56.1 statement of facts as "PRDSOF," Plaintiff's Statement of Additional Facts as "PSOAF," and Defendant's response to Plaintiff's statement of additional fact as "DRPSOAF."

returned to the position in late 2008. *Id*. She joined the police force as a part-time officer in 2009. *Id*. At some point (unidentified in the record), Woods became a full-time police officer. *Id*. at ¶ 2. On October 3, 2018, Terry White was appointed Chief of Police for Markham. PRDSOF ¶ 4. Prior to that appointment, White was a long-time lieutenant in the Department. *Id*.

At all relevant times, the Department workday consisted of three eight-hour duty shifts and patrol officers were assigned evenly to staff shifts. PRDSOF ¶ 8. In 2018, patrol officers in Markam were part of a collective bargaining unit represented by the Teamsters, Local 700. *Id*. According to the CBA, the Department was subject to a minimum staffing requirement for each shift. *Id*. The minimum staffing requirement was five officers per shift. *Id*. A typical shift included four patrol officers and a sergeant as supervisor. *Id*. However, the Department management possessed authority to staff a shift with more officers than the minimum number required. *Id*. at ¶ 9. The Police Chief possessed discretion to determine the number of officers assigned to a shift, depending on available personnel. *Id*. In addition, the Police Chief possessed the discretion to direct extra personnel to a particular shift, as needed. *Id*. For example, the Chief might direct extra personnel to a shift because of special events or circumstances like scheduled concerts or New Year's Eve night. *Id*.

Prior to her midnight shift on October 17, 2018, Woods submitted a leave-of-absence form because she wanted to attend a family anniversary party the next evening on October 18, 2018. PRDSOF ¶ 24. The shift Woods wanted to take off had the contractually required minimum staffing scheduled. *Id*. at ¶ 25; DRPSOAF ¶ 4. Upon completion of her midnight shift on the morning of October 18, 2018, Sergeant Samuel Harris informed Woods that her day-off request

had been denied. PRDSOF ¶ 26; DRPSOAF ¶ 4. Woods recalls Sergeant Harris telling her that Chief White denied her request and he did not know why Chief White denied it.[3] PRDSOF ¶ 26.

Woods believes her request for time-off on October 18, 2018 was denied because of her sex. PRDSOF ¶ 34. According to Woods, in her experience, if a shift had at least the minimum required staff committed to it, an officer's request to take off that shift normally would have been granted. *Id*. Woods also asserts that Levester Dean, a male officer, was granted time off even though his absence caused a shortage in manpower.[4] PSOAF ¶ 7.

There is no dispute that a leave-of-absence request might be denied for a number of reasons, including manpower/personnel issues. *Id*. at ¶ 33. Sergeants might request more officers than the minimum for a shift in anticipation of busy nights such as when a festival is scheduled or to handle problems with bars, strip clubs, and shootings. *Id*. Woods testified that the shift she wanted to take off on October 18, 2018 had six patrol officers, two part-time officers, and two sergeants assigned. Doc. 64-5 at 54:8-55:17. That was higher than typical for a midnight shift, but Woods testified that "nothing was happening that night on October 18, 2018." *Id*. at 55:23-56:12.

Moreover, it is undisputed that during Chief White's 30 years with the Department, there was no set policy or practice that mandated granting an officer's time-off request for a shift as long as the minimum staffing requirement was met for that shift. PRDSOF ¶ 35. There is no written provision in any department policy or in the patrol officer's CBA that states an officer's day-off

---

[3] Markham disputes that Chief White denied Woods's request for time-off on October 18, 2018. DSOF ¶¶ 27, 29-32. It is undisputed that the Deputy Chief, as well as the Police Chief, possessed authority to grant or deny time-off requests. PRDSOF ¶ 23. According to Markham, Deputy Chief Genius denied the time-off request Woods submitted on October 17, 2018 and he did not consult Chief White about the request. DSOF ¶¶ 29, 32.

[4] Although Woods does not provide a date for this time-off request, Markham does not dispute that there may have been circumstances or a situation where Officer Dean was granted time-off and the shift may have been "short." DRPSOAF ¶ 7.

request should be granted as long as minimum staffing was still available for the shift. *Id*. at ¶ 36. Rather, the patrol officer's CBA gave the Police Chief or his designee the authority to grant or deny time-off requests and there was never blanket approval if the minimum staffing was met for a shift. *Id*. at  ¶ 35.

In October 2018, Woods was scheduled to attend a two-day Police Counter Ambush Tactic training course to be held in Tinley Park, Illinois on October 25, and 26, 2018. PRDSOF ¶ 10. Another full-time patrol officer from the Department, Cordell Clement (male), was scheduled to attend the same training course with Woods. *Id*. at ¶ 11.  Training course attendees were asked to bring a simulated (replica) weapon and protective eye and ear-wear from their own police departments. *Id*. at ¶ 12.  Woods asked Chief White about the training equipment she and Officer Clement needed. *Id*. at ¶ 13.  Chief White indicated that he would talk to Deputy Chief Jack Genius and get the training equipment they both needed to Officer Clement to bring to the training. *Id*. Chief White and his staff looked for the training equipment, but this was early during the transition to his new administration as Police Chief and the transition was chaotic. *Id*. at ¶ 14.  At that time, Chief White did not have keys to certain rooms and things were missing, including equipment and files. *Id*.  Ultimately, Chief White did not locate the training equipment Woods sought. *Id*.

When Woods saw Officer Clement at the training course, he did not have the equipment they needed. PRDSOF ¶ 15.  Officer Clement indicated that he did not know anything about the equipment and that he did not have any communication with Chief White about it. *Id*.  When Woods informed the training instructor that she and Officer Clement did not have the requested equipment for the course, the instructor told her that they could participate in the training and borrow someone else's equipment. *Id*. at ¶ 16.  Both Woods and Officer Clement borrowed training equipment from other attendees and participated in the training course. *Id*. at ¶ 17.  They both

completed every portion of the training and received certificates for their successful completion. *Id*. at ¶¶ at 17, 18. There is no dispute that when only male officers were assigned to take the Police Counter Ambush Training Course, the Department provided training equipment for them. DRPSOAF ¶ 10.

In February 2019, Woods filed a charge of discrimination with the Illinois Department of Human Rights which was cross-filed with the EEOC.[5] Doc. 64-4 at 14-15. Woods wrote "10/17/2018" as both the earliest and latest dates of discrimination and did not check the "continuing action" box on her charge. *Id*. at 14. Specifically, Woods listed "sex" in the "cause of discrimination based on" section and provided the following narrative:

    I. A.    ISSUE/BASIS: UNEQUAL TERMS AND CONDITIONS OF EMPLOYMENT – OCTOBER 2018, BECAUSE OF MY SEX, FEMALE

      B.    PRIMA FACIE ALLEGATIONS

        1.  My sex is female.

        2.  My performance as Police Officer for the City of Markham meets Respondent's expectation. I was hired in 2009.

        3.  On October 2018, I was subjected to unequal terms and conditions of employment by Terry White (male), Chief of Police. On October 17, 2018, I requested a day off but White denied the requested day off. No reason was given.

        4.  In October 2018, I was scheduled to attend a class for Police Counter Ambush Tactics Training on October 25th and 26th 2018. Prior to attending the class I asked Chief White for the equipment I would need for the class which included a stimulation [sic] handgun and rounds; a face shield; and eye and hearing protection. I never received the equipment. No reason was given for not providing the necessary equipment.

        5.  Similarly situated male police officers were treated more favorably.

---

[5] "IDHR has a worksharing agreement with EEOC, whereby a charge filed with IDHR is automatically cross-filed with EEOC." *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016).

*Id.* at 14-15.  In April 2019, Chief White approved Woods's requests for days offs on April 22, 23, and 29, 2019. PRDSOF ¶ 40.  On December 5, 2019, the IDHR issued a Notice of Dismissal for Lack of Substantial Evidence. Doc. 64-4 at 16-29.

The next month, in January 2020, Woods requested a leave-of-absence to attend the funeral of her godfather. PRDSOF ¶ 37.  This request did not qualify for a bereavement leave under the CBA. *Id*.  Woods recalls that her supervisor, Nicole Wilkins, signed off on the request, but it was denied by Chief White. *Id*; PSOAF ¶ 5; Doc. 64-5 at 70:1-6.  No reason was listed on the form for the denial, and Woods never had a conversation with Chief White or anyone else about the reason for the denial. PRDSOF ¶ 37.[6]  In May 2023, Woods left the Department, and she currently works as a police officer for Norfolk Southern Railroad. DRPSOAF ¶ 39.[7]

Woods filed this case against Markham on March 9, 2020. Doc. 1.  She alleges "Sex Discrimination and Harassment" under Title VII (Count I) and intentional infliction of emotional distress (Count II). *Id*.  Markham now moves for summary judgment on all claims on various grounds.  The case was reassigned to this Court on April 2, 2024.

---

[6] In addition, Woods cites her declaration for the assertion that in June 2021, she "was told she could not take vacation time because only one person in the department could take vacation at that time." PSOAF ¶ 9.  She also claims, however, that two male officers were off at the same time in June 2021. *Id*.  Woods's declaration does not support her assertion that in June 2021 she was told she could not take vacation because only one person could be off at that time.  Therefore, the Court does not consider this proposed fact.

[7] Woods's brief and Statement of Additional Material Facts include a number of other incidents of alleged discriminatory treatment against Woods, including reassigning her to a squad car without a working computer or radio, lack of promotions, negative comments by Chief White and Woods's sergeant, improperly discipling her, and placing her under investigation (PSOAF ¶¶ 11-25), and discriminatory treatment against other female officers. *Id*. at ¶¶ 27-34.  However, because the Court's exhaustion ruling substantially narrows the claims in this case and because the remaining incidents are not relevant to the Court's disposition of the matter, the Court does not recount them.

## II. Analysis

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter" but rather determines whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in h[er] favor." *Id.* at 255.

### A. Exhaustion

Woods's complaint claims she was subject to harassment based on her sex and sex discrimination centered on allegations of removal from her assignment, unsafe working equipment, lost promotions, and "belittling and condescending language." Doc. 1, ¶ 10(a), (c)-(f). Markham argues that Woods cannot bring these claims because she did not include them in her IDHR charge.  In her IDHR charge, in discussing the particulars of her prima facie allegations, Woods focused only on evidence of sex discrimination based on two specific incidents which occurred in October 2018. Doc. 64-4 at 15.  She contended that on October 17, 2018, she requested a day off, but Chief White denied the request. *Id*.  She further asserted that she asked Chief White for equipment for a training session on October 25 and 26, 2018, but she never received the equipment. *Id*.  She also alleged that she was meeting Department's performance expectations and that similarly situated male police officers were treated more favorably. *Id*.

"In general, a plaintiff can only bring claims under Title VII or the IHRA that he has included in the original charge filed with the Equal Employment Opportunity Commission ("EEOC") or the IDHR." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019); *Rush v.*

*McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) ("An aggrieved employee may not complain to the [relevant agency] of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination."). This limitation "affords the employer some notice of the conduct underlying the employee's allegation" and allows "the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Cervantes*, 914 F.3d at 564.

However, the Court can consider Woods's added claims if they are "like or reasonably related" to what she described in her IDHR charge and can be "reasonably expected to grow out of" an agency investigation of the charge. *Cervantes*, 914 F.3d at 564. Claims are "reasonably related" when "there is a factual relationship between them." *Sommerfield v. City of Chi.*, 863 F.3d 645, 648 (7th Cir. 2017). This means the charge and the complaint must "describe the same conduct and implicate the same individuals." *Id.* Whether Woods's claims are within the scope of her IDHR charge is a question of law. *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 257 (7th Cir. 2011).[8]

The Court first considers Woods's harassment claim based on sex. Harassment on the basis of sex to the point of creating a hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or

---

[8] Relatedly, "[b]efore bringing a Title VII claim, a plaintiff must first exhaust [her] administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). A right-to-sue letter from the EEOC is not in the record. Markham raised the lack of a right-to-sue letter from the EEOC as an affirmative defense in its answer. Doc. 20 at 7. But in its summary judgment motion, Markham does not argue that Woods's Title VII claims fail because she did not exhaust her administrative remedies by not obtaining a right-to-sue letter from the EEOC. Because the failure to exhaust administrative remedies is an affirmative defense that does not bear on the Court's jurisdiction, the Court does not sua sponte consider the issue. *Mosely v. Bd. of Educ.*, 434 F.3d 527, 533 (7th Cir. 2006); *Worth v. Tyer*, 276 F.3d 249, 259 (7th Cir. 2001) ("the receipt of a right-to-sue letter is not a jurisdictional prerequisite to bringing a Title VII suit."); *Gibson v. West*, 201 F.3d 990, 993 (7th Cir. 2000) (holding "a failure to exhaust administrative remedies is not a jurisdictional flaw.").

[pervasive] to alter the conditions of the victim's employment and create an abusive working environment." *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (internal quotes and citation omitted). A harassment claim on the basis of sex in the form of hostile work environment is not automatically "reasonably related to" a sex discrimination claim. *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) ("Normally, retaliation, sex discrimination, and sexual harassment charges are not "like or reasonably related" to one another to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another."); *Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000) (sexual harassment claim in lawsuit "wholly diverse from the claim of disparate treatment [on the basis of sex] described in her EEOC charge."); *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994) ("Ordinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination."). The Seventh Circuit has "explained that a plaintiff cannot advance a different type of legal theory than the types she brought to the EEOC when 'the two types of claims are analyzed differently under the law.'" *Methavichit v. Follenweider*, 2021 WL 6050061, at *5 (N.D. Ill. Dec. 21, 2021) (quoting *Green v. National Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999)). "In other words, the EEOC would conduct its investigation differently if it knew that the employee was claiming sexual harassment rather than, say, disparate treatment." *Id*.

Woods does not seriously argue that that her harassment based on sex claim is like or reasonably related to the allegations in her IDHR charge. Rather, she offers only conclusory arguments. She first asserts that her "harassment claim naturally grows out of the conduct investigated by the Department of Human Rights." Doc. 70 at 21. Further, she contends her "harassment claims arise from the same time period and implicate the same individuals as her discrimination claims." *Id*. at 22. The Court disagrees.

9

The circumstances in Woods's IDHR charge do not describe any conduct that could be considered "severe or pervasive" or suggest that a harassment claim could reasonably be expected to grow out of the IDHR's investigation. *Cheek*, 31 F.3d at 504. Woods's harassment claim centers on negative comments made by Chief White and Woods's sergeant "Sam" (last name unknown)[9], as well as a claim that she was assigned to a squad car without a working computer or radio.[10] Doc. 70 at 22-23; PSOAF ¶¶ 13, 19, 20; Doc. 69-1 at 60. By contrast, the IDHR charge described Chief White's denial of Woods's request for a day off on October 18, 2018 and his failure to provide equipment for a training session on October 25 and 26, 2018. Because the allegations underpinning Woods's harassment claim involve different incidents, conduct, and an additional individual than her sex discrimination claim, they are not "reasonably related" to the allegations set forth in her IDHR charge. *Sitar*, 344 F.3d at 726-27. Accordingly, Woods has failed to exhaust her administrative remedies for her claim of harassment based on sex.[11]

Woods's complaint also alleges several discriminatory acts not referenced in her charge, including removal of assignment, unsafe working equipment, lost promotions, and being subjected

---

[9] Woods claims Chief White belittled her by telling her co-workers that she was dumb and stupid and used her looks to get ahead. PSOAF ¶ 19. Woods further claims that her sergeant complained about her "hair being all over the place" in front of four other officers. *Id*. at ¶ 20.

[10] Lieutenant Eric Blohm and Sergeant Matthew Carey made recommendations regarding squad car assignments, but Chief White made the ultimate squad car assignment decisions. Doc. 64-8, Blohm Dep. at 84:3-8.

[11] *See Jayne v. ABF Freight Systems, Inc.*, 202 F.3d 273, at *2 (7th Cir. 1999) (holding complaint's allegation of sexual harassment were not within the scope of the charge where charge made no mention of behavior that could be construed as sexually harassing and complaint did not describe same incidents or individuals as those specified in charge); *Pena v. Indianapolis Public School Corp.*, 402 F.Supp.3d 485, 492094 (S.D. Ind. 2019) (dismissing hostile work environment claim where charge made "no reference to 'harassment' or any conduct that would give rise to a hostile work environment as opposed to a claim related to the specific instances of discrimination alleged by" plaintiff); *Trnava v. Chicago Cut Steakhouse, LLC*, 2021 WL 148870, at *1-2 (N.D. Ill. Jan. 16, 2021) (dismissing religious harassment claim as beyond the scope of the charge where the plaintiff alleged only religious discrimination, not religious harassment, in the EEOC charge).

to "belittling and condescending language." Doc. 1, ¶ 10(c)-(f). Woods's briefing does not address Markham's argument that these instances of alleged sex discrimination are outside the scope of her IDHR charge. Therefore, Woods have waived any contention that she has exhausted her claims based on these events. *Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

But even if not waived, Woods has not exhausted her claims based on these events because there is nothing like them in the IDHR charge. Claims of sex discrimination in a charge and sex discrimination in a complaint are not alike or reasonably related simply because they both assert sex discrimination. *Cheek*, 31 F.3d at 501 ("Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination. "); *see also Thomas v. Chicago Teachers' Pension Fund*, 2022 WL 17543703, at *3 (7th Cir. Dec. 6, 2022), at * 3 ("[A]sserting 'the same kind of discrimination' in the charge and complaint is not sufficient to relate the two; rather, some factual connection is needed."). There must be a factual relationship between the claims to satisfy the exhaustion requirement. *Id*. Here, the only conduct alleged in the IDHR charge includes sex discrimination based on denial of time off and training equipment for a two-day course. That is not the same conduct as the additional allegations in the complaint. Accordingly, Woods did not exhaust administrative remedies for her challenges to removal of assignment, unsafe working equipment, lost promotions, and being subjected to "belittling and condescending language." These claims as well as Woods's harassment claim are dismissed without prejudice as unexhausted.

### B. Sex Discrimination

The Court now turns to Woods's sex discrimination claims.  In light of the Court's ruling on the exhaustion issue, the only remaining employment actions that form the basis of Woods's sex discrimination claims are the failure to provide training equipment for a two-day course and denial of time off requests.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Markham applies the burden-shifting framework of *McDonnell Douglas Green*, 411 U.S. 792 (1973), to Woods's sex discrimination claims.  Under that framework, a plaintiff may establish a prima facie case of discrimination by showing that "(1) [s]he is a member of a protected class, (2) [s]he was meeting the employer's legitimate expectations, (3) [s]he suffered an adverse employment action, and (4) similarly situated employees who were not members of the protected class were treated more favorably." *Reives v. Illinois State Police*, 29 F.4th 887, 891 (7th Cir. 2022).  At summary judgment, the plaintiff bears the burden of presenting evidence of a prima facie case of discrimination. *Id*.  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.*  The plaintiff must then offer evidence to show that the defendant's stated explanation is a pretext for discrimination. *Id.*

In response, Woods cites *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), in which the Seventh Circuit "held that district courts must not evaluate indirect and direct evidence via 'methods' in employment discrimination cases because such an approach 'detract[s] attention from the sole question that matters, *i.e.*, whether a reasonable jury could conclude that

the plaintiff suffered the adverse employment action because of his membership in a protected class." *Reives*, 29 F.4th at 892. Under *Ortiz*, the court "look[s] at the evidence in the aggregate to determine whether it allows an inference of prohibited discrimination." *Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023). The plaintiff can elect to proceed under either or both frameworks. *Id.* ("In our circuit, plaintiffs can rely on two frameworks to show discrimination."). Regardless of the approach used, "any Title VII claim must stand on an adverse employment action." *Scalise v. Village of McCook*, 2024 WL 3385557, at *7 (July 11, 2024); *Ortiz*, 834 F.3d at 765 (requiring proof that discrimination "caused the discharge or other adverse employment action.").

Markham contends that the treatment of which Woods complains—denial of training equipment and two days off—are not adverse employment actions. For purposes of a discrimination claim, a materially adverse employment action is one that involves "a significant change in employment status." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (quoting *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 235 (7th Cir. 2014)). Examples of adverse employment actions include: "(1) reductions in compensation, fringe benefits, or other financial terms of employment, including termination; (2) preventing an employee from using the skills she developed and in which she is trained, such that those skills atrophy and her long-term career prospects are reduced; or (3) changing an employee's work conditions in a way that subjects h[er] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in h[er] workplace environment." *Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1005 (7th Cir. 2018) (internal quotes and citations omitted). The action "must be *materially* adverse, not merely an inconvenience or a change in job responsibilities." *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (emphasis added). Each allegedly adverse incident is evaluated on its own, rather than

13

together. *Boss*, 816 F.3d at 918 ("Insofar as [plaintiff] argues for a 'totality of circumstances' view, the caselaw limits that approach to his hostile work environment claims.").

Woods's opposition brief does not address Markham's argument regarding training equipment and therefore, she has waived it. *Nichols*, 755 F.3d at 600. Even if it was not waived, the denial of training equipment for a two-day course is not an actionable adverse employment action. The Seventh Circuit has held that similar conduct is not actionable without evidence that the change had any significant job consequences. *Markel v. Bd. of Regents of University of Wisconsin System*, 276 F.3d 906, 911 (7th Cir. 2002) (holding denial of "better" equipment does not constitute an adverse employment action); *Place v. Abbott Laboratories*, 215 F.3d 803, 810 (7th Cir. 2000) (concluding that loss of a telephone and cubicle are "too trivial to amount to an adverse employment action").[12] Here, there is no evidence showing that the denial of training equipment for the two-day course impacted Woods's compensation or benefits, changed her job in a way that reduced her career prospects, or created a significant negative alteration in her work environment. Rather, the undisputed record indicates that Woods borrowed training equipment from other attendees and actually participated in the training. PRDSOF ¶¶ 16-17. It is also undisputed that she completed every portion of the training and was issued a certificate for her successful completion of the training. *Id*. at ¶¶ 17-18. Though it may have been inconvenient to Woods to have to borrow training equipment, Woods offers no explanation for how her own police department's training equipment might have changed things. Chief White's failure to provide the training equipment Woods sought is not an adverse employment action. Moreover, Woods's

---

[12] *See also Barrett v. Illinois Cmty. Coll. Dist. No. 515*, 2019 WL 3554109, at *8 (N.D. Ill. Aug. 5, 2019) (holding denial of lab supplies and key to the cabinet where some supplies were stores was not materially adverse).

allegations of sex discrimination are undermined by the Department's denial of department-issued training equipment to a male colleague (Officer Clement) for the same two-day course.

Next, Woods claim that she requested time off but did not receive it because of her sex. Woods relies on *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826 (7th Cir. 2015), in her briefing to argue that she was "regularly denied time off," which, she asserts, would constitute a significant change in benefits and an adverse employment action. Doc. 70 at 15. In making this assertion, Woods does not cite to record evidence supporting that she was regularly denied time off. Such a conclusory assertion, unsupported by evidence, is insufficient, and the Court disregards the argument that Woods suffered an adverse employment action in the form of regular denial of time off. Fed. R. Civ. P. 56(c)(1)(A); *Berman v. YRC Freight*, 2019 WL 4412730, at * 3 (N.D. Ill. Sept. 16, 2019). Instead, the record supports denials of only two days off in October 2018 and January 2020. PRDSOF ¶¶ 29, 37.

In any event, *Huri* does not help Woods. In that case, the Seventh Circuit held that the plaintiff was subject to an adverse employment action when she was denied time off, among other things. *Huri*, 804 F.3d at 833. *Huri* is distinguishable because the plaintiff in that case alleged retaliation. In the retaliation context, an adverse employment action "simply means an employer's action that would dissuade a reasonable worker from participating in protected activity." *Id*. The *Huri* court noted that discrimination claims, as opposed to retaliation claims, require a heavier burden" because an adverse employment action must involve "a significant change in employment status, and often involves the employee's current wealth, her career prospects, working conditions, etc." *Id.* at 833 n.3. Moreover, courts have consistently found in the discrimination context that the denial of preferred time off or vacation time is not an adverse employment action. *Griffin*, 356 F.3d at 829 (refusal to provide annual leave requests when work was backlogged was not an

adverse employment action); *Saggu v. Dejoy*, 2021 WL1165106, at *11 (N.D. Ill. March 26, 2021) ("denials of leave requests are generally not materially adverse employment action."); *Mahran v. Advocate Health and Hospitals Corp.*, 2019 WL 952131, at *10 (N.D. Ill. Feb. 26, 2019) ("refusal to honor an employee's preferred vacation schedule amounts to merely an inconvenience and does not materially alter the terms and conditions of the employee's job."), *aff'd sub nom. Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708 (7th Cir. 2021).

Here, the denial of time off in October 2018 and January 2020 involved "no reduction in pay and no more than a minor change in working conditions." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Further, Woods has not shown that any time off was taken away from her. *See Jarolin-Bogert v. Off. of Chief Judge of Cir. Ct. of Cook Cnty.*, 2023 WL 5956994, at *10 (N.D. Ill. Sept. 13, 2023). There is also no dispute that Chief White authorized Woods's request for a personal day and two vacation days off for April 22, 23, and 29, 2019. PRDSOF ¶ 40; *see Mackenzie v. Potter*, 219 F. App'x 500, 503 (7th Cir. 2007) (holding denial of occasional requests for leave did not constitute a material adverse employment action). Woods believes that if a shift had a least the minimum required staff assigned to it, an officer who requested to take-off that shift should normally have the request granted. PRDSOF ¶ 34. However, it is undisputed that officers are not ordinarily entitled to take leave as they see fit. *Id*. at ¶¶ 35, 36. As such, there is no genuine dispute that that these two incidents of denial of time off do not rise to the level of an adverse employment action.[13]

---

[13] Woods's declaration states in a general and conclusory way that when she "put in requests for vacation they were often ignored for months before being unreasonably denied." Doc. 69-1 at 52, ¶ 6; *see* PSOAF ¶ 8. This conclusory statement in Woods's declaration, without any factual support or specific examples, does not create a genuine issue of fact as to whether any adverse action was taken against Woods in connection with the denial of her time off requests. *Stein v. Ashcroft*, 284 F.3d 721, 726 (7th Cir. 2002); *Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998).

Woods complains about other incidents as well, but they are unexhausted. According to Woods, she was subjected to a humiliating, degrading, unsafe and unhealthy work environment, the third category of adverse employment action. Specifically, Woods points to: (1) Markham "putting [her] in a barely running vehicle that was not equipped with the materials necessary to keep her safe or before her job" and (2) "her command staff regularly spoke negatively about her to other officers in a condescending, demeaning, and sexist way." Doc. 70 at 16. Woods's argument fails because the only way those incidents taken together could constitute an adverse employment action is if they created a hostile work environment. *Tarpley v. City of Colleges of Chicago*, 752 F. App'x 336, 346-39 (7th Cir. 2018); *Barton v. Zimmer, Inc.*, 662 F.3d 448, 454 (7th Cir. 2011). But for the reasons discussed in the prior section, Woods's hostile work environment claim alleging the same incidents is unexhausted. Doc. 70 at 22-23. Woods's failure to exhaust her harassment claim means she cannot rely on these acts as an adverse employment action when a hostile work environment claim cannot be raised against Markham. In other words, Woods cannot backdoor an unexhausted hostile work environment claim via an adverse employment action argument.

In sum, with respect to the claims that were properly exhausted (failure to provide training equipment and denial of time off), Woods has not offered evidence that would permit a reasonable jury to find that she suffered any adverse employment action. At summary judgment, a plaintiff must make a "showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Woods has failed to do so on the existence of an adverse employment action. Because the adverse employment action element is dispositive, the Court need not discuss the parties' arguments regarding pretext. *Reives*, 29 F.4th at 894-95; *Lewis v. Wilkie*, 909 F.3d 858, 871

(7th Cir. 2018). Markham is therefore entitled to summary judgment on Woods's Title VII sex discrimination claims.

### C. Intentional Infliction of Emotional Distress

In light of these rulings, all of Woods's federal claims have been dismissed, leaving only Woods's state law claim for intentional infliction of emotional distress claim. A federal court "may decline to exercise supplemental jurisdiction" over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Given the dismissal of the only federal claims before it, the Court must determine whether it is appropriate to exercise supplemental jurisdiction over Woods's state law claim pursuant to 28 U.S.C. § 1367.

"The general rule, when the federal claims fall out before trial, is that the [district court] should relinquish jurisdiction over any supplemental . . . state law claims in order to minimize federal judicial intrusion into matters of purely state law." *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) (internal quotes and citation omitted); *see also Black Bear Sports Group, Inc. v. Amateur Hockey Ass'n of Ill., Inc.*, 962 F.3d 968, 972 (7th Cir. 2020) ("Because the federal claim fails, any state-law claims belong in state court"); *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 618 (7th Cir. 2018) ("there is a general presumption that the court will relinquish supplemental jurisdiction and dismiss the state-law claims without prejudice.") (emphasis in original). This is true even when the decision is on the eve of trial so long as the district court has not made a "substantial investment" of time in the untried claims. *RWJ Mgmt. Co., Inc. v. BP Products North America, Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). "[O]nly in 'unusual cases' may a district court exercise its discretion to assert its supplemental jurisdiction based upon the balance of the factors of 'judicial economy, convenience, fairness and comity.'" *Burritt*, 807 F.3d at 252. (quoting *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)).

The Court finds, in considering the factors of judicial economy, convenience, fairness, and comity, no persuasive reason to retain supplemental jurisdictional in this case. The Court has not invested significant resources on the state law claim or engaged in any meaningful review of its merits. Moreover, it is no less convenient for the parties to proceed in state than in federal court, and the discovery conducted by the parties here can be applied to litigation in state court. The Court also sees no unfairness that would result from litigation in state court. Finally, Illinois courts are better suited to resolve issues of state law.

Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining intentional infliction of emotional distress claim. *Lavite v. Dunstan*, 932 F.3d 1020, 1034 (7th Cir. 2019) (after granting summary judgment on all of plaintiff's federal claims, the "district court acted well within its discretion in declining to exercise supplemental jurisdiction."); *Williams v. Vill. of Alsip, Illinois*, 2024 WL 1116106, at *6 (N.D. Ill Mar. 14, 2024) ("declin[ing] to exercise jurisdiction over state law intentional infliction of emotional distress claim.").

### III. Conclusion

For the reasons stated above, the Court grants Defendant's motion for summary judgment on Woods's sex discrimination claims based on failure to provide training equipment and denial of days off. Woods's sex-based claim of harassment and her claims that she was removed from her assignment, subjected to unsafe working equipment, lost promotions, and subjected to "belittling and condescending language" because of her sex are dismissed without prejudice as unexhausted. *McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022). Finally, Wood's intentional infliction of emotional distress claim is dismissed without prejudice to refiling in state court.

**SO ORDERED.**

Dated:  August 6, 2024

_____
Sunil R. Harjani
United States District Judge